**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FORBRIGHT BANK, f/k/a CONGRESSIONAL BANK,** | : : : : | |
| Plaintiff, | : : | **CIVIL ACTION** |
| v. | : : | |
| **HARRISBURG HOTELS LLC,** | : : | **NO.** |
| Defendant. | : : : : | |

**COMPLAINT**

Plaintiff, Forbright Bank, f/k/a Congressional Bank ("Lender"), for its complaint against defendant, Harrisburg Hotels LLC ("Borrower"), avers as follows:

**I.   PARTIES, JURISDICTION AND VENUE**

1. Forbright Bank, f/k/a Congressional Bank, is a Maryland state-chartered bank with its main office located at 4445 Willard Avenue, 10th Floor, Chevy Chase, Maryland 20815.

2. Borrower is a Delaware limited liability company with an address c/o Yaniv Blumenfeld, 20 East 42nd Street, Suite 3002, New York, New York 10017, and based on its membership is a citizen of Florida and New York.

   (a)   Borrower's sole member is GGP Hotel Harrisburg Owner LLC, a Delaware limited liability company.

   (b)   The sole member of GGP Hotel Harrisburg Owner LLC is GGP Hotel Harrisburg LLC, a Delaware limited liability company.

(c) GGP Hotel Harrisburg LLC has two members: (1) GPC Glacier LLC, a Florida limited liability company, and (2) KDL-T Management LLC, a Delaware limited liability company.

(d) The sole member of GPC Glacier LLC is Jonathan Ghitis, a citizen of Florida, making GPC Glacier LLC a citizen of Florida as well.

(e) The sole member of KDL-T Management LLC is Yaniv Blumenfeld, a citizen of New York, making KDL-T Management LLC a citizen of New York as well.

(f) Because its members are citizens of Florida and New York, GGP Hotel Harrisburg LLC is a citizen of Florida and New York, as, in turn, is GGP Hotel Harrisburg Owner LLC (of which it is sole member), and Borrower (of which GGP Hotel Harrisburg Owner LLC is sole member).

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and the action is between citizens of different states (Maryland and New York).

4. Venue exists in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because the real property that is the subject of this action is situated in this district – specifically, at 4650 Lindle Road, Harrisburg, PA 17111.

## II.  FACTS

### A.  The Original Loan Transaction

5. On or about October 5, 2021, GGP Hotel Harrisburg Funder LLC ("Original Lender") issued to Borrower a commercial mortgage loan in the principal amount of $23,000,000.00 (the "Loan").

6. The Loan is evidenced by a Promissory Note dated October 5, 2021, executed by Borrower in favor of Original Lender in the principal amount of $23,000,000.00 (the "Note"), a copy of which is attached hereto as ***Exhibit A***.

7. To secure repayment on the Note, Borrower executed in favor of Original Lender an Open-End Mortgage, Assignment of Leases and Rents, Security Agreement dated and effective as of October 5, 2021 (the "Mortgage"), with respect to the improved real property described in the Mortgage and located at 4650 Lindle Road, Harrisburg, Pennsylvania 17013. The Mortgage was recorded with the Dauphin County Recorder of Deeds (the "Recorder") on November 3, 2021, as Instrument No. 20210038777. A copy of the recorded Mortgage is attached hereto as ***Exhibit B***.

8. The Loan is also evidenced by a Loan Agreement between Borrower and Original Lender dated as of October 5, 2021 (the "Loan Agreement"), a copy of which is attached hereto as ***Exhibit C***.

9. The Loan Agreement was subsequently amended several times, including, *inter alia*: a First Amendment to the Loan Agreement dated as of May 3, 2024 (the "First Amendment"), a copy of which is attached as ***Exhibit D***; a Second Amendment to the Loan Agreement dated as of October 8, 2024 (the "Second Amendment"), a copy of which is attached as ***Exhibit E***; and a Third Amendment to the Loan Agreement (the "Third Amendment"), a copy of which is attached as ***Exhibit F*** (collectively, the "Amendments").

10. The Note, the Mortgage, the Loan Agreement, the Amendments, and various other documents executed by Borrower with respect to the Loan are collectively referred to herein as the "Loan Documents."

### B. The Assignment of the Loan to Lender

11. Subsequent to origination, the Loan was assigned by Original Lender to Lender, which at the time was known as, and operated as, Congressional Bank.

12. In connection with the assignment of the Loan, Original Lender delivered the original Note to Lender with an affixed Note Allonge, a copy of which is attached hereto as ***Exhibit G***.

13. Also in connection with the assignment of the Loan, Original Lender executed in favor of Lender an Assignment of Open-End Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, effective as of October 5, 2021, a copy of which is attached hereto as ***Exhibit H***, which was recorded with the Recorder on January 21, 2026 as Instrument No. 20260001599.

### C. Relevant Contractual Provisions

14. The Mortgage secures, *inter alia*, the payment of the Debt (as defined) and the performance of, *inter alia*, all of Borrower's payment obligations under the Note, the Loan Agreement and the other Loan Documents. *See* Ex. B (Mortgage) at p. 1.

15. Borrower is the owner of the real property located at 4650 Lindle Road in Harrisburg, Dauphin County, Pennsylvania, as more fully described in Exhibit A to the Mortgage (the "Land"), together with the Improvements thereon as defined in the Mortgage.

16. The Mortgage grants to Lender a security interest in all of Borrower's present and future property, rights, interests and estates in the Land and the Improvements, together with the Equipment, Fixtures, Personal Property, Leases and Rents, all as defined in the Mortgage, and various other property owned by Borrower and collectively defined in the Mortgage as the "Property." *See* Ex. B (Mortgage) at pp. 1-3.

17. The Loan Agreement requires that Borrower make a payment to Lender on each Payment Date, which is defined as the ninth day of each calendar month through the maturity of the Loan, in the Monthly Debt Service Payment Amount, which is defined as "the interest on the Outstanding Principal Balance accrued and accruing from the first day of the applicable Interest Period through and including the last day of the Interest Period and, if applicable, the Required Amortization Payment." *See* Ex. C (Loan Agreement) § 2.3.1 and at pp. 17 (defining "Interest Period"), 21 (defining "Monthly Debt Service Payment Amount"), 25 (defining "Outstanding Principal Balance" and "Payment Date"), and 29 (defining "Required Amortization Payment").

18. The Loan Agreement provides that:

> If any principal, interest or any other sum due under any Loan Document is not paid by Borrower on the date on which it is due, other than the payment of the Outstanding Principal Balance due on the Maturity Date, Borrower shall pay to Lender upon demand an amount equal to the lesser of five percent (5%) of such unpaid sum or the maximum amount permitted by applicable law (the "**Late Payment Charge**"), in order to defray the expense incurred by Lender in handling and processing such delinquent payment and to compensate Lender for the loss of the use of such delinquent payment.

*See* Ex. C (Loan Agreement) § 2.3.3.

19. The Loan Agreement provides that it shall constitute an Event of Default "if the Debt is not paid in full on the Maturity Date[.]" *See* Ex. C (Loan Agreement) § 10.1(a)(A).

20. The First Amendment extended the Maturity Date to October 9, 2024. *See* Ex. D.

21. The Second Amendment extended the Maturity Date to December 2, 2024. *See* Ex. E.

22. The Third Amendment to the Loan Agreement extended the Maturity Date to January 9, 2025. *See* Ex. F.

23. The Loan Agreement also provides that it shall constitute an Event of Default "if any regularly scheduled monthly payment of interest, and, if applicable, principal due under the Note is not paid in full on the applicable Payment Date[.]" *See* Ex. C (Loan Agreement) § 10.1(a)(B).

24. The Loan Agreement also provides that it shall constitute an Event of Default "if Borrower or Guarantor shall . . . generally not be paying its debts as they become due[.]" *See* Ex. C (Loan Agreement) § 10.1(g)(ii).

25. The Loan Agreement provides that, "[i]n the event that, and for so long as, any Event of Default shall have occurred and be continuing, the Outstanding Principal Balance and, to the extent not prohibited by applicable law, all other portions of the Debt, shall accrue interest at the Default Rate," which is defined as "a rate per annum equal to twenty percent (20%)." *See* Ex. C (Loan Agreement) § 2.2.3 and at p. 10 (defining "Default Rate").

26. The Mortgage provides that, "[u]pon the occurrence and during the continuance of any Event of Default," Lender may, *inter alia*, "declare the entire Debt to be immediately due and payable" and "institute a proceeding or proceedings . . . for the complete foreclosure of this Security Instrument under any applicable provision of law." *See* Ex. B (Mortgage) §§ 10(a)(i)-(ii).

27. The Mortgage further provides that "[u]pon the occurrence and during the continuance of any Event of Default . . . Lender is authorized to . . . appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Security Instrument or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees and disbursements to the extent permitted by law), with interest thereon at the Default Rate for the period after notice from Lender that such cost or expense was incurred to the date of payment to

Lender, shall constitute a portion of the Debt, shall be secured by this Security Instrument and the other Loan Documents and shall be due and payable to Lender upon demand. *See* Ex. B (Mortgage) § 9; *see also id*. § 10(a)(viii).

28. Additionally, the Loan Agreement provides that "Borrower shall pay or, if Borrower fails to pay, reimburse Lender upon receipt of notice from Lender for all reasonable out-of-pocket costs and expenses (including reasonable attorneys' fees and disbursements) incurred by Lender in connection with the Loan, including" *inter alia* "enforcing any obligations of or collecting any payments due from Borrower under this Agreement, the other Loan Documents or with respect to the Property or in connection with any refinancing or restructuring of the Loan in the nature of a 'work-out'[.]" *See* Ex. C (Loan Agreement) § 5.18(a).

**D.   Borrower's Maturity Default**

29. Borrower failed to repay the entirety of the Loan as of January 9, 2025, the Maturity Date pursuant to the Third Amendment to the Loan Agreement.

30. Borrower's failure to repay the entirety of the Loan as of the Maturity Date constitutes an Event of Default under the Loan Documents. *See* Ex. C (Loan Agreement) § 10.1(a)(A).

31. Original Lender provided a Notice of Default to Borrower by letter dated February 17, 2025, a copy of which is attached hereto as ***Exhibit I***, which advised Borrower in relevant part that "Borrower failed to repay the Loan in full when required on the Maturity Date, which failure constitutes an Event of Default under the Loan Agreement." *See* Ex. I (Notice of Default) at p. 2.

32. Notwithstanding the Notice of Default, Borrower failed to cure the Event of Default by paying the amounts due.

33. To date, Borrower has failed to pay the Debt in full or otherwise cure the ongoing Event of Default.

34. Accordingly, Lender brings this action to foreclose the Mortgage.

**E.    Lender's Damages**

35. As of February 9, 2026, there was due and owing on the Loan without defense, deduction, offset, recoupment, or counterclaim the total amount of $28,326,375.00, itemized as follows:

| | |
|---|---|
| Principal Balance | $22,456,502.00 |
| Note Rate Interest | $3,276,099.00 |
| Default Interest (1/9/25-2/9/26) | $2,257,829.00 |
| Protective Advance | $308,275.00 |
| Fees | $27,670.00 |
| TOTAL AMOUNT DUE a/o 2/9/2026 | $28,326,375.00 |

36. Additional interest at the Note Rate and the Default Rate as well as other fees, charges and costs recoverable under the Loan Documents have continued and continue to accrue on the Loan.

## COUNT ONE – MORTGAGE FORECLOSURE

37. Paragraphs 1 through 36 of this Complaint are incorporated herein by reference.

38. Borrower executed the Note, which is secured by the Mortgage, in favor of Lender.

39. Borrower has defaulted on its obligations under the Note, the Mortgage, the Loan Agreement and the other Loan Documents.

40. Lender is authorized by the Mortgage to foreclose the Mortgage in the event of a default by Borrower, and, under applicable Pennsylvania law, foreclosure is an equitable remedy available to a lender.

41. There is currently due and owing on the Loan the sum of $28,326,375.00, together with interest and default interest, fees, charges and costs accrued and accruing since February 9, 2026, as recoverable under the Loan Documents.

WHEREFORE, Lender respectfully requests that judgment in mortgage foreclosure be entered in its favor and against Borrower in the amount of $28,326,375.00, together with additional interest and default interest, fees, charges and costs accrued and accruing since February 9, 2026, as recoverable under the Loan Documents, and that Lender be awarded such other and further relief as the Court in its discretion may deem equitable and just.

## COUNT TWO – SALE OF PROPERTY

42. Paragraphs 1 through 36 of this Complaint are incorporated herein by reference.

43. Borrower granted to Original Lender in the Mortgage a security interest in, *inter alia*, the Property defined in pages 1-3 of the Mortgage and described in Exhibit A to the UCC-1 Financing Statement described below, which are incorporated herein by reference.

44. Original Lender perfected its lien and security interest in the Property by filing a UCC-1 Financing Statement with the Recorder, recorded on November 3, 2021 as Instrument No. 20210038779 and subsequently assigned to Lender, a copy of which is attached hereto as **Exhibit J** and incorporated herein by reference for purposes of Rule 1147(b)(2) of the Pennsylvania Rules of Civil Procedure.

45. Borrower has defaulted on its obligations under the Note, the Mortgage, the Loan Agreement and the other Loan Documents.

46. Lender is authorized by the Mortgage and by Pennsylvania law to foreclose its security interest in the Property in the event of a default by Borrower.

47. Pursuant to Pennsylvania Rule 1147(b), Lender hereby elects to have the Property sold at public sale together with the real property under the Mortgage.

WHEREFORE, Lender respectfully requests that the Court order the Property to be sold together with the real property under the Mortgage according to law to satisfy the amounts due to Lender and for such other and further relief as the Court in its discretion may deem equitable and just.

Dated:  February 25, 2026         */s/ Raymond A. Quaglia*
                                  Raymond A. Quaglia, Esq.
                                  Christine Barba, Esq. (*pro hac vice* forthcoming)
                                  Brian N. Kearney, Esq. (*pro hac vice* forthcoming)
                                  BALLARD SPAHR LLP
                                  1735 Market Street, 51st Floor
                                  Philadelphia, PA  19103
                                  (215) 665-8500
                                  quaglia@ballardspahr.com
                                  barbac@ballardspahr.com
                                  kearneyb@ballardspahr.com

                                  Counsel for Plaintiff