## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FORBRIGHT BANK, f/k/a CONGRESSIONAL BANK,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HARRISBURG HOTELS LLC,**<br><br>**Defendant.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION**<br><br><br>**NO. 1:26-cv-00478-YK** |

## <u>STIPULATED ORDER FOR APPOINTMENT OF RECEIVER</u>

It is hereby STIPULATED AND AGREED by and between plaintiff, Forbright Bank, f/k/a Congressional Bank ("<u>Plaintiff</u>" or "<u>Lender</u>"), and defendant, Harrisburg Hotels LLC ("<u>Borrower</u>," and collectively with Plaintiff or Lender, the "<u>Parties</u>"), and ORDERED by the Court, as follows:

1.    HEPA Associates LLC, a Pennsylvania limited liability company, which is an operating affiliate of GF Hotels & Resorts, is hereby appointed, for the benefit and protection of the Parties' rights and interests, as the receiver ("<u>Receiver</u>") for the management of the real property owned by Borrower at 4650 Lindle Road in Harrisburg, Dauphin County, Pennsylvania (the "<u>Real Property</u>"), including but not limited to the hotel located thereon and currently operated as the Sheraton Harrisburg Hershey Hotel (the "<u>Hotel</u>"), all buildings and improvements erected or standing on the Real Property, the personal property located thereon and/or owned by Borrower, and all appurtenances, liens, easements, equipment, intellectual property (including user IDs and passwords), fixtures, privileges, licenses and rights attached or belonging to the Real Property, with all rents, issues, income and profits of the foregoing and all other interests granted to Lender under the Open-End Mortgage, Assignment of Rents, Security Agreement and Fixture Filing

effective as of October 5, 2021 (the "Mortgage"), executed by Borrower in favor of an original

lender and ultimately assigned to Lender (collectively, the "Mortgaged Property").

2.      Receiver's appointment is permitted pursuant to Section 10(a) of the

Mortgage, and Borrower consents to Receiver's appointment.  The Parties agree that Borrower's

consent is not intended, and shall not be construed, to constitute a Springing Recourse Event or

otherwise trigger liability under Section 11.1 of the Loan Agreement.

3.      Receiver shall serve without bond.

4.      Within five (5) days from the date of this Order, such date to be determined

by the Parties in cooperation with the Receiver (the "Effective Date"), Borrower, its agents,

employees and/or affiliates shall surrender to Receiver possession and control of the Mortgaged

Property, together with the following items related to the operation of the Mortgaged Property

(without regard to whether such items constitute the Mortgaged Property), and such other items as

may be requested by the Receiver in connection with its possession, control and operation of the

Mortgaged Property in accordance with this Order, to the extent such items are within the

possession, custody or control of Borrower, its agents, employees and/or affiliates:

(a)      any and all bank accounts and credit card merchant accounts related

to or held in connection with the Mortgaged Property, its operation or management thereof

and all revenues generated from the Mortgaged Property since the entry of this Order;

(b)      all permits, licenses, binders, contracts and agreements and all

modifications thereto regarding the Mortgaged Property including, but not limited to, any

liquor licenses (subject to applicable Pennsylvania law, rules and regulations);

(c)      all business records, including, but not limited to, books and records

relating to the Mortgaged Property, books of account, ledgers, records of advance deposits

2

and payments, computer software or data, savings and checking account books, expense statements and any other documents in any way relating to the income, expenses and operation of the Mortgaged Property;

(d)    all invoices of current payables regarding the Mortgaged Property;

(e)    all of Borrower's remaining property and assets related to the Mortgaged Property, including, without limitation, all accounts, inventory, rent rolls, books, documents, files, financial records, notices, licenses, permits, physical and virtual keys, fobs, security codes, passwords, access tools, point-of-service equipment, elevator technology, warranties and all other agreements regarding the use, management, sale, reservation, service and operations on, at or about the Mortgaged Property, maintenance and service contracts, insurance policies and all other documents and items Receiver may reasonably request to carry on the management of the Mortgaged Property;

(f)    all vehicles and related vehicle title and registration records used in the operation of the Mortgaged Property; and

(g)    inventory of and access to any safe deposit boxes.

5.    As of the Effective Date, all persons now in possession of any part of the Mortgaged Property are directed to surrender possession thereof to Receiver, and all tenants and guests in possession of any such property, and such other persons or corporations as may be lawfully in possession thereof are directed to attorn to Receiver and to pay over to Receiver all rents and amounts for such property now due and unpaid, or that may hereafter become due, until further order of this Court.

6.    Following the first full calendar month of its appointment as Receiver and each successive calendar month thereafter, Receiver shall file monthly written reports with the

Court within 20 days of month's end. Each report shall be prepared with a case caption, signed by Receiver, and filed with the Clerk by or on behalf of Receiver, with copies to be served upon the attorneys of record for the Parties. Each report shall include (i) a computerized monthly summary of revenue and disbursements; and (ii) a comparison of actual revenues and disbursements to the budgeted amounts on an accrual basis as that term is commonly understood in the accounting profession.

       7.     Compensation for Receiver shall be as follows: (i) a one-time transition fee of $10,000; (ii) a Management Fee equal to the greater of $10,000 or 3% of the total gross revenues per month; (iii) an Accounting Fee of $2,500 per month; (iv) reimbursement of reasonable out of pocket expenses, with receipts or other applicable supporting documentation (provided that any such expenses in excess of $5,000 are subject to the Lender's prior approval); and (v) a Final Receivership Fee equal to $10,000 after the conclusion of the receivership in order to finalize all accounting and court-related wind down issues. Receiver shall be entitled to pay itself such compensation from receivership funds in Receiver's possession, and all payments to Receiver shall be added to the total indebtedness owed by Borrower to Plaintiff. In the event there are insufficient funds from the operation of the Mortgaged Property to pay all amounts due to Receiver, Plaintiff may, in its sole discretion, fund such amounts due to Receiver. Nothing contained in this Order shall be construed as obligating or permitting Receiver to advance its own funds to pay for any costs or expenses of the receivership estate. Additionally, Receiver shall be permitted to enter into a property management agreement with an affiliated party, on usual and customary industry terms generally acceptable to Plaintiff, whose property management fees shall be paid from a portion of Receiver's fees. Receiver shall be provided with Initial Working Capital of $200,000 immediately upon commencement of the receivership.

8.    Subject to any restrictions set forth herein, Receiver is hereby empowered, directed and authorized by this Court to do any and all things necessary for the proper management, operation, preservation, maintenance, protection and administration of the Mortgaged Property. Receiver shall have and possess all powers and rights to the extent necessary to facilitate its management and preservation of the Mortgaged Property, including, but not limited to, the following:

(a)    *Possession*. Receiver shall take exclusive possession and control of the Mortgaged Property, plus all the rents, prepaid rents, security deposits, guest deposits storage fees, parking fees, lease payments, royalties, issues, profits, revenue and income thereof (collectively, the "Rents and Profits");

(b)    *Operation and Management*.  Receiver shall have the power to operate and manage the Mortgaged Property, and the ongoing business on the Mortgaged Property, and to safeguard the Mortgaged Property, making or authorizing such expenditures and repairs as are needed to keep the Mortgaged Property in good and rentable condition, subject to Lender's advance approval for individual expenditures in excess of $10,000.00, except for expenditures for payroll and taxes;

(c)    *Receiver's Agents*.  Receiver is authorized to appoint or hire and pay such agents, professionals, independent contractors, and employees as may be needed to assist Receiver in operating and managing the Mortgaged Property, provided the amount of compensation paid to such parties must be reasonable and comparable to that charged by similar parties for similar services;

(d)    *Legal Counsel*.  Receiver is authorized to hire independent legal counsel, if needed and as determined by Receiver, among other things, to defend or

commence any lawsuit with regard to the Mortgaged Property, and to pay such counsel for their services at rates Receiver deems appropriate for the services provided;

(e)     *Employees*.    Receiver is authorized to hire employees at the Mortgaged Property and pay such employees in accordance with all applicable laws, without any liability to the Receiver. Borrower or its property manager shall terminate any and all employees at the Mortgaged Property as of the Effective Date and such termination shall be in compliance with any applicable federal, state or local statutes and regulations including those governing mass layoffs.  To the extent Receiver decides to hire any of the dismissed employees, agents or other personnel with respect to the Mortgaged Property, neither Receiver nor the receivership estate shall be liable for any claims of such employees, agents, or other personnel that arose prior to the date and time of the entry of this Order. Borrower or any management companies engaged by Borrower (as appropriate) will be solely and exclusively responsible for (a) any claims or liabilities that arose prior to the appointment of Receiver that are in any way related to an employee's employment with or separation from Borrower or any management companies engaged by Borrower, including any compensation, benefits, accrued vacation, payroll taxes, workers compensation insurance, severance liabilities, contractual obligations, benefit plans, and (b) liabilities existing prior to Receiver's appointment related to the Worker Adjustment and Retraining Notification Act (WARN), 29 U.S.C. § 2101, *et seq.*, and liabilities existing prior to Receiver's appointment related to the Consolidated Omnibus Budget Reconciliation Act (COBRA), or similar state statutes or regulations.

(f)     *Existing Bank Accounts and Credit Cards*.  Receiver is authorized to take possession of, or issue demands for, the freezing and turnover of funds upon any

financial institution that Receiver has determined is a depository of funds belonging to, or arising from, Borrower and/or the Mortgaged Property, whether such accounts be titled in the name of Borrower or not, and to indemnify the institution upon which such demand is made on behalf of the receivership estate if Receiver deems such indemnification necessary.  All banks and other financial institutions, upon presentation of a copy of this Order, shall: (i) provide access to any bank accounts titled in the name of Borrower or pertaining to the Mortgaged Property and copies of any requested records regarding any such accounts to Receiver; (ii) operate, maintain, open, transfer, close and/or change all bank and trade accounts required for the ordinary operation of the Mortgaged Property, so that all such accounts are in the name of Receiver; provided, however, that Receiver shall deposit all Rents and Profits collected and received in connection with the Mortgaged Property at federally-insured banking institutions or savings associations that are not parties to this action; (iii) take possession, custody and control of all credit card merchant accounts, and related deposits, such as Visa, MasterCard, American Express, Discover and otherwise required for the ordinary operation of the Mortgaged Property, whether such funds be in accounts titled in the name of Borrower or not, and to take all reasonable steps necessary to enter into, maintain compliance under, or secure the continuation or renewal of such agreements affecting the Mortgaged Property; and (iv) utilize any federal or state taxpayer identification numbers relating to the Mortgaged Property (including those of Borrower) in connection with the Mortgaged Property;

(g)    *Utility Services and Deposits*.  Receiver is authorized to issue demands, in the name of the receivership estate, upon public utilities that Receiver determines provide services to the Mortgaged Property and to transfer such services,

together with any deposits held by the utility, to the exclusive control of Receiver.  Such utilities shall be prohibited from demanding that Receiver deposit additional funds in advance to maintain or secure services.  Receiver has the power to procure or maintain appropriate utility services for the Mortgaged Property;

(h)      *Post Office Box*.  Receiver is authorized to: (i) issue demands in the name of the receivership upon the U.S. Postal Service, or any other public or private entity, to gain exclusive possession and control of such postal boxes as may have been used by Borrower and/or its agents for the receipt of rent, income, and other mail related to the Mortgaged Property; (ii) open and review mail that appears to Receiver to pertain to the Mortgaged Property, whether or not directed to Borrower or any of their respective related parties or their respective representatives; and (iii) direct the U.S. Postal Service that mail to Borrower and/or to the Mortgaged Property be redirected and released to Receive;

(i)      *Demand for Deposits*.  Receiver is authorized to demand deposits from available leases and other records, compute the amount of deposits collected by Borrower and/or its employees and agents from tenants for security or any other purposes, demand the surrender to Receiver of such deposits by Borrower and/or its agents who collected them and take appropriate action to enforce the turnover of such deposits;

(j)      *Pre-Receivership Bills*.  Receiver is authorized to pay only current operating expenses associated with the Mortgaged Property incurred by Receiver subsequent to its appointment, including, without limitation, Receiver's fees and administrative expenses.  Receiver may not use funds of the receivership estate to pay any bills for goods or services contracted for or provided in connection with the Mortgaged Property, or to Borrower and/or its agents, prior to the date of this Order, unless such

payment is reasonably necessary or beneficial to enable Receiver to continue to operate the Mortgaged Property as determined by Receiver in its reasonable discretion;

(k)    *Insurance*.  Receiver is authorized to determine whether adequate insurance is in place, and if not, to order and pay for such insurance from available funds; provided that such insurance shall, at a minimum comply with the loan documents. Receiver shall be the named insured or be an added named insured.  Plaintiff and Borrower shall be named as additional named insureds on all such insurance policies, as applicable. Receiver is authorized in its discretion to terminate any existing policies and to procure policies of insurance as are customary for similarly situated properties and as it deems necessary.  Any refund or return of an unearned premium shall be paid to Receiver and be property of receivership estate.  No insurance company shall be permitted to terminate coverage or refuse coverage for the Mortgaged Property based upon prior unpaid premiums, claims history or because of the appointment of the Receiver pursuant to this Order.  No insurance company may cancel its existing current-paid policy as a result of the appointment of Receiver, without prior order of this Court.  Subject to Plaintiff's approval, Receiver may, with reasonable written notice to Borrower, take control of, negotiate and/or settle any pending or potential insurance claims concerning the Property, with the proceeds to be remitted to the receivership estate;

(l)    *Right to Contract*.  Receiver shall be the exclusive manager and leasing agent for the Mortgaged Property.  Receiver may negotiate, make and enter into, modify or terminate without payment of liquidated damages or penalties, leases, contracts, license agreements (subject to Lender's approval) or any other agreements affecting any part or all of the Mortgaged Property.  However, Receiver may not execute any

amendment, modification or new contract, lease or agreement for an amount exceeding $10,000.00 (other than ordinary and necessary trade accounts payable or for those expenditures ordinarily and necessarily incurred in the operation of the Mortgaged Property) or a period exceeding one year without Lender's approval;

(m)     *License or Franchise Agreement*.  Receiver is authorized to enter into a license (or franchise) agreement (a "<u>Franchise Agreement</u>"), or to operate the Hotel under any existing Franchise Agreement or an assignment of any existing Franchise Agreement, with Marriott International, Inc., or its affiliate ("<u>Marriott</u>" or "<u>Licensor</u>") during the pendency of the receivership, under terms satisfactory to Receiver and Lender, for the operation of the Hotel by a third-party management company approved by Marriott in accordance with the terms thereof.  Notwithstanding any provision to the contrary, Receiver is authorized to pay license fees, all service and technology and other fees, charges and costs included in and part of the operation and management of the Mortgaged Property, including without limitation marketing and advertising costs and expenses as part of the operation of the Hotel.  Receiver is also authorized to communicate, negotiate, or otherwise deal with Licensor with regard to any Borrower performance under any applicable license agreement, including but not limited to curing any possible default or renewing such agreement; provided, however, that no action shall be taken in respect of the property improvement plan or a new property improvement plan under an applicable license agreement without Lender's prior written consent. Receiver or Receiver's property manager shall have the option to cure any existing defaults under the governing license agreement, but shall not have the obligation to do so.  Nor shall Receiver be obligated to pay termination fees or liquidated damages under the governing license agreement. In addition, the Receiver shall provide Marriott with at least thirty (30) days prior written notice of the sale of the Hotel or the termination of the Receivership, provided

that if the Receiver does not have thirty (30) days advance knowledge of a sale or termination, the Receiver shall provide Marriott with notice promptly upon obtaining knowledge of such sale or termination;

(n)    *Communications with Licensor*.  Receiver may communicate with Licensor, and Licensor is authorized to provide to Receiver all such information as Receiver may reasonably request, regarding Licensor's prior or continuing arrangements or work with Borrower, including but not limited to financial information, written membership or other agreements between Licensor and Borrower.  Receiver is also authorized to request and receive from Licensor all information, materials and benefits of online and other reservation systems, Licensor's systems and intellectual property;

(o)    *Termination of License Agreement*.  Subject to Lender's approval, Receiver is further authorized, in the exercise of its reasonable discretion, to terminate any license arrangement with Licensor and to continue or discontinue operations of the Hotel as it may determine is reasonable under the circumstances;

(p)    *Tenant Improvements*.  Subject to the provisions of paragraph 8(l), Receiver is authorized to expend sums from the receivership estate that, in Receiver's opinion and subject to Lender's approval, are required to make the Mortgaged Property rentable or to keep the Mortgaged Property in good and rentable condition;

(q)    *Operating Budget, Income Statements and Balance Sheets*. Receiver shall develop and maintain an annual monthly operating budget, to be presented to Lender or its agent for approval within 60 calendar days of the date of this Order, that will serve as the basis for monthly requisitions and expenditures to fund operations.  Not more than 20 days following a written request by Lender, Receiver shall deliver to Lender an audit against the operating budget versus the actual expenditures for any completed

11

monthly or quarterly period.  Receiver shall also prepare such further income statements and balance sheets as are normal and customary for hospitality management;

(r)    *Distribution of Funds*.  If Receiver determines that the receivership possesses funds in excess of that needed to pay all of its operating costs, including property taxes, outstanding bills and obligations and Receiver's fees, then Receiver shall make distributions to Lender, with such sums to be applied by Lender in the manner provided under the loan documents, or as otherwise determined by the this Court, provided that such distributions shall not affect the underlying foreclosure action or modify Borrower's performance dates or obligations in any way under the applicable loan documents.  The receipt and application of any monies to the indebtedness due and owing to Lender shall not operate as a cure to any of Borrower's defaults under the applicable loan documents, nor shall such application reinstate the loan nor act to bar or estop Lender from proceeding with this foreclosure action or proceeding with any other remedies available to Lender. Any distribution of funds to Lender shall be included in Receiver's reports to the Court;

(s)    *Disbursements.*  Notwithstanding anything to the contrary in this Order, without the approval of Lender, Receiver shall not expend or disburse more than $10,000.00 at any one time to any single vendor or invoice except for emergency and/or safety repairs to the Mortgaged Property and normal or customary obligations of the Mortgaged Property, including, but not limited to, payroll and taxes, and nothing in the Court's order shall obligate Lender to lend or disburse any funds or amounts to Receiver;

(t)    *Rents and Profits*.  Receiver may demand, collect, and receive all Rents and Profits for the Mortgaged Property or any part of it that are owed, unpaid and uncollected as of the effective date of this Order, or hereafter to become due, including,

but not limited to, all tax and insurance refunds of any kind (whether such refunds are due for a former, current or future taxable or policy period);

(u)    *Licenses*.  Receiver may obtain and pay any and all fees associated with any lawful license or permit required to operate the Mortgaged Property, including but not limited to any liquor license, and, to the extent permitted by law, exercise the privileges of any existing license or permit issued in connection with the Mortgaged Property or any business transacted with respect to it, until further order of the Court, and to do all things necessary to protect and maintain said licenses and permits, including, but not limited to, taking such license or permit in the name of the Receiver or a nominee of the Receiver. Receiver is authorized and, and to the extent permitted by applicable law, directed to take possession of and operate in the place of Borrower and its affiliates and agents under all liquor licenses for the Mortgaged Property, even if not in the name of the Borrower (the "Liquor Licenses"), together with all permits associated therewith, and to take any action permitted thereunder.  Borrower shall: (i) execute and deliver such documentation and certificates as are necessary or required to operate, transfer or cancel the Liquor Licenses; and (ii) not engage in any acts that would interfere with Receiver's operation, transfer or cancellation of the Liquor Licenses.  Receiver shall not exercise its rights under the Liquor License except in accordance with applicable laws, rules and regulations, including, if applicable, the approval of the Pennsylvania Liquor Control Board;

(v)    *Taxes*.  Receiver may pay any taxes due in connection with the operation of the Mortgaged Property and, with Lender's consent, appeal any past, present or future assessments by the taxing authorities.  To the extent permitted by the Internal

13

Revenue Service regulations, Receiver may obtain its own tax identification, sales tax, reseller and similar numbers and accounts and prepare and file tax returns arising in connection with the operation and management of the Mortgaged Property as may be required by law.  The responsibility for such filings and payments prior to the appointment of Receiver lies exclusively with Borrower and its agents, employees, and representatives, as applicable.  Receiver and Borrower, as the case may be, shall provide to the other copies of any tax returns filed with respect to the Property.  Receiver shall not be required to prepare and file any tax returns for Borrower or affiliates (including without limitation, income, personal property, commercial activity, gross receipts, sales and use or other tax returns) other than to provide Borrower with information in Receiver's possession that may be necessary for Borrower or its affiliates to prepare and file their tax returns.  Borrower shall cooperate and provide to Receiver any information needed to file any tax returns for the Mortgaged Property; and

        (w)    *Marketing and Sale of Mortgaged Property*.  Pursuant to applicable state law, and with the consent of Plaintiff, Receiver may market and sell the Property, retain any marketing analysts, advertisers or brokers (with the retention of any broker subject to Lender's approval, for usual and customary consideration), and undertake any and all other duties associated with the marketing and sale of the Property, under such conditions as Plaintiff may in its sole discretion deem appropriate or desirable, including executing documents necessary for consummation of a sale, with such sale being subject to Court approval.

        9.    *Termination of Receivership*.  This receivership will continue for such time until the Court enters an order terminating it and discharging Receiver; provided that to the extent

Receiver no longer desires to serve in that capacity, upon 30 days' prior written notice to Lender and Borrower, Receiver may apply to the Court for termination of its appointment.  In the event of a note sale or transfer of the Loan Documents to a new lender, Receiver may withdraw as Receiver upon ten (10) days' notice to the parties and this Court.  Within 45 days of the completion of its duties pursuant to this Order, Receiver shall file a Notice of Termination and Request for Discharge Order seeking discharge by the Court from its responsibilities as Receiver herein.  The Notice of Termination and Request for Discharge Order shall include a final Report, summarizing all of Receiver's activities, providing a final accounting, and reporting the final disposition of any legal claims, and Receiver may incur legal costs and fees relative to all of these actions.  To the extent that the Worker Adjustment and Retraining Notification Act (WARN), 29 U.S.C. § 2101, *et seq.*, or similar state or municipal statue, ordinance, or regulation applies (the "WARN ACT"), Lender shall provide Receiver at least 75 days' notice of the closing of any such foreclosure sale such that Receiver is able to comply with applicable notice requirements to the employees under those statutes and/or regulations.  If for any reason Receiver is discharged prior to this Court's entry of judgment of foreclosure or the dismissal of this case, Plaintiff shall be entitled to designate a successor receiver.  Upon termination of the Receivership, Receiver shall have the right to retain sufficient funds to pay its final expenses and fees. In the event that funds on hand at the time of termination are insufficient, Plaintiff may, in its sole discretion, fund the shortfalls.

10.     *Receiver's Turnover of Possession.*  Upon foreclosure of the Mortgaged Property or the dismissal of the action upon which this receivership is based, Receiver shall turn over possession of the Mortgaged Property to the then-owner of the Mortgaged Property, and Receiver shall petition the Court to discharge Receiver as noted herein, provided that Receiver shall have first submitted its final report and accounting.  Upon approval of Receiver's final

accounting and termination by the Court, all lessors, lessees, customers, principals, investors, suppliers and creditors who are not a named party to the action shall be barred from seeking to enforce any claim, right or interest against Receiver and the indemnification of Receiver by the receivership estate shall survive the termination of this receivership.

11.    *No Liability.*  The Receivership estate, Receiver and its affiliates and their respective employees, agents, attorneys and all professionals and management companies retained by Receiver shall not be held liable for any claim, obligation, liability, action, cause of action, cost, expense or debts incurred by Borrower or its management company or affiliates.  Receiver shall not be responsible for payment of any costs, fees, charges, or expenses incurred with regard to the Property prior to Receiver taking possession of the Mortgaged Property, including (i) any claims or liabilities in any way related to an employee's employment with or separation from Borrower or any related management company for the Mortgaged Property and (ii) any compensation, benefits, payroll taxes, workers compensation insurance, severance liabilities, contractual obligations, benefit plans or liabilities related to the WARN ACT or similar state or municipal statutes, ordinances, or regulations.  Receiver shall not be required to use any bank account amounts, revenues, profits, or monies collected by Receiver for payment of any of the foregoing costs, fees, charges, and expenses.

12.    *No Personal Risk or Obligation of the Receiver.*  No risks or obligations incurred by Receiver in connection with receivership shall be the personal risk or obligation of Receiver but shall be a risk or obligation of receivership estate.  Without limiting any other rights or immunities which Receiver may have at law or in equity, Receiver shall not have any liability for acts or omissions arising within the scope of the receivership or this Order, except to the extent that liability arises from the gross negligence or willful misconduct of Receiver.  Receiver shall

not be personally liable for torts committed in the performance of receivership duties; any liability shall be in Receiver's official capacity only, to be satisfied solely from receivership estate. Those parties acting on behalf of Receiver in connection with this Order shall be protected and privileged, having the same protections of the Court as Receiver.

13.     Neither Receiver, nor any affiliate including their respective directors, officers, shareholders, employees or agents shall have any liability for any violations of Environmental Laws (as defined below) relating to the Mortgaged Property and whether or not such violations arose before or after entry of this Order. The action or inaction of Receiver in connection with services under this Order shall not give rise to any claim against Receiver, or any of their respective directors, officers, shareholders, employees, or agents concerning any past, present or future violations of Environmental Laws regarding the Mortgaged Property except to the extent any such violations were expressly caused by a Receiver's breach of fiduciary duties committed in bad faith by Receiver, intentional breach of fiduciary duties under this Order by Receiver, or the breach of fiduciary duties arising from reckless indifference to the fiduciary duties arising under this Order. As used in this Order, "Environmental Law(s)" shall mean and include, but is not limited to any present and future federal, state and local laws, statutes, ordinances, rules, regulations and the like, as well as common law relating to the safety, welfare and protection of the environment, human health or any natural resources. Receiver is not, nor shall it be deemed to be, an owner or operator of the Mortgaged Property for purposes of any Environmental Law.

14.     Borrower and its affiliates, agents, representatives, and employees shall not:

(a)     Interfere with Receiver, directly or indirectly, in the management and operation of the Mortgaged Property and the collection of the Rents and Profits derived from the Mortgaged Property;

17

(b)     Collect, attempt to collect or keep the Rents and Profits derived from the Mortgaged Property;

(c)     Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in or dispose of the whole or any part of the Mortgaged Property (including the Rents and Profits thereof), without the prior written consent of Receiver and Lender; provided, however, that nothing contained in this Order shall prohibit or restrain Lender from initiating and/or completing a sale by judicial foreclosure of the Mortgaged Property, or any portion thereof, and thereafter taking title and possession thereto; and

(d)     Do any act that will, or will tend to, impair, defeat, divert, prevent or prejudice the preservation of the Mortgaged Property (including the Rents and Profits thereof), or Lender's interest in the Mortgaged Property and the Rents and Profits.

15.     The receivership estate shall indemnify and hold harmless Receiver and its current and former affiliates, directors, officers, partners, agents, employees, consultants, subcontractors, representatives or control persons from any claims made by persons not a party to this Order, which claims are related to or arise out of the actions and operations of this receivership, except in a case where Receiver has acted outside the scope of the receivership authority, committed fraud, intentionally misrepresented Receiver's ministerial authority as Receiver, or acted in a grossly negligent manner.

16.     No individual or entity may sue or otherwise initiate any other legal action against Receiver, its agents, employees and/or affiliates with respect to the Mortgaged Property without first obtaining the permission of this Court.  It is further ordered that, except by leave of this Court, all lessors, lessees, customers, principals, investors, suppliers or creditors seeking to

enforce any claim, right or interest against Borrower are barred by this Order from using any "self-help" or doing anything whatsoever to interfere in any way with Receiver in the conduct of the receivership estate; provided, however, that nothing contained in this Order shall prohibit or restrain Lender from initiating and/or completing a sale by judicial foreclosure of the Mortgaged Property, or any portion thereof, and thereafter taking title and possession thereto.

17.    All of Borrower's current and, to the extent applicable, former employees, agents, attorneys and directors shall promptly and fully cooperate with Receiver in connection with Receiver's performance of its duties and are prohibited from interfering with the powers or duties of Receiver.  Borrower is further prohibited from directing anyone to interfere, in any way, with Receiver in the execution of this Order.

18.    Borrower's principals, partners, agents, employees and all other persons acting in concert with them, are restrained and enjoined from: (i) withdrawing, paying or otherwise transferring funds derived from the Mortgaged Property, except to Receiver; (ii) removing, disposing of, destroying, concealing, changing or altering any of the Mortgaged Property; and (iii) taking any action on behalf of Borrower or related to the Mortgaged Property without the express consent and permission of Lender and Receiver.

19.    Any brokerage firm, financial institution, bank or mutual fund or any other person or entity having possession, custody or control of any brokerage, checking or deposit account or other property that receives actual notice of this Order, by personal service, facsimile transmission or otherwise, shall serve on Receiver a statement with respect to each such account or asset, the balance in the account or description of the assets.

20.    Receiver shall maintain a bank account insured by the FDIC (the "Account"), into which it shall deposit all funds that it receives and from which it shall pay any

authorized expenses and costs incurred during the duration of the receivership.  Receiver may open as many bank accounts in the name of Receiver as it may deem necessary to fulfill its duties pursuant to this Order.

21.    In the event that the funds maintained in the Account are insufficient to pay reasonable and necessary expenses and costs to manage the Mortgaged Property or the fees authorized herein, Lender may, at its sole and absolute discretion, advance at any given time, any charges, expenses or fees incurred by Receiver in connection with the management of the Mortgaged Property as costs in this action, and such advancements shall be added to the indebtedness due under the loan between Lender and Borrower and secured by Lender's mortgage and allowed as priority costs and expenses of protecting and preserving the Mortgaged Property in any judgment of foreclosure awarded to Lender.  Lender is authorized to disburse said funds to Receiver for such purposes without further order of this Court.  All such monies advanced by Lender shall constitute a perfected lien upon the Mortgaged Property prior and superior to any right, title, interest or lien of Borrower or any of the other parties to this action, shall accrue interest thereon at the rate set forth in the loan documents being foreclosed in this action and shall be entitled to priority payment prior to the payment of any other expenses associated with this cause or the repayment of the monies due to Lender under the loan documents. If the Lender, in its sole discretion, does not advance funds, Receiver is authorized to allocate funds in the Account as may be available as Receiver may reasonably determine, and to the extent Receiver is not capable of performance of its duties by reason of such lack of funds, Receiver shall be relieved from performing them and Receiver may withdraw as Receiver upon ten (10) days written notice to the Parties and this Court.

22.    Lender, Borrower and the other parties to this action and their respective agents shall have the right to inspect the Mortgaged Property and the books and records of Receiver at any time upon reasonable notice, so long as such inspections do not result in the harassment of Receiver or interfere with the obligations or duties of Receiver hereunder.

23.    The Court shall retain jurisdiction and supervision of all matters concerning Receiver and the receivership estate.  Receiver may seek instructions and additional authority from the Court upon written notice to Lender and Borrower.

24.    If Borrower files a bankruptcy case during the receivership, upon Lender's knowledge thereof, Lender shall give notice of the bankruptcy case to the Court and to Receiver. If Receiver receives notice that the bankruptcy has been filed and that part of the bankruptcy estate includes the Mortgaged Property (or any part thereof), Receiver shall have the following duties:

(a)    Receiver shall immediately contact Lender and determine whether Lender intends to move in the bankruptcy court for an order for: (i) relief from the automatic stay; and (ii) relief from Receiver's obligation to turn over the Mortgaged Property (11 U.S.C. § 543).  If Lender disclaims in writing any intention to make such a motion or fails to file such motion within ten court days following its receipt of notice of the bankruptcy filing, Receiver shall immediately turn over the Mortgaged Property (or applicable portion thereof) to the appropriate entity (either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession) and otherwise comply with 11 U.S.C. § 543.

(b)    If Lender intends to seek relief immediately from both the automatic stay and Receiver's obligation to turn over the Mortgaged Property, Receiver may remain in possession and preserve the Mortgaged Property pending the ruling on those motions

unless otherwise ordered by the Bankruptcy Court. (11 U.S.C. § 543(a).) Receiver's authority to preserve the Mortgaged Property shall be limited as follows: (i) Receiver may continue to collect Rents, Profits, and other income; (ii) Receiver may make only those disbursements necessary to preserve and protect the Mortgaged Property; (iii) Receiver shall not execute any long-term contracts without the approval of this Court and the Bankruptcy Court; and (iv) Receiver shall do nothing that would effect a material change in the circumstances of the Mortgaged Property.

25.     Receiver may petition the Court to retain legal counsel to assist Receiver with issues arising out of the bankruptcy proceedings that affect the receivership estate.

**PLAINTIFF:**

FORBRIGHT BANK, F/K/A CONGRESSIONAL BANK

By: */s/ Raymond A. Quaglia, Esq.*
      Raymond A. Quaglia, Esq.
      Christine Barba, Esq. (*pro hac vice* forthcoming)
      Brian N. Kearney, Esq. (*pro hac vice* forthcoming)
      BALLARD SPAHR LLP
      1735 Market Street, 51st Floor
      Philadelphia, PA  19103
      (215) 665-8500 (Telephone)
      quaglia@ballardspahr.com
      barbac@ballardspahr.com
      kearneyb@ballardspahr.com

      Counsel for Plaintiff

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

**DEFENDANT:**

HARRISBURG HOTELS LLC,
a Delaware limited liability company


By: */s/ Cory Mitchell Gray, Esq.*
    Cory Mitchell Gray, Esq.
    Greenberg Traurig, LLP
    Three Foley Square
    1717 Arch Street
    Suite 400
    Philadelphia, PA 19103
    Tel No. (215) 988-7800
    grayc@gtlaw.com


    Counsel for Defendant




**APPROVED AND SO ORDERED**
this     day of           , 2026

BY THE COURT:


_____
                              J.